# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| William Krieger, | : |
|  | : |
| Plaintiff, | : |
|  | : |
| v. | : |
|  | : |
| Bank of America, N.A., | : |
|  | : |
| Defendant. | : |

Civil Action No. 4:16-CV-00830

Matthew W. Brann
United States District Judge

**BANK OF AMERICA, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Respectfully Submitted,

*/s/ Robert E. Warring*
Robert E. Warring
Attorney I.D. No. 209326
REED SMITH LLP
Three Logan Square
1717 Arch Street
Philadelphia, PA  19103
215-851-8100

*Attorneys for Defendant
Bank of America, N.A.*

Dated:  May 16, 2016

# <ins>**TABLE OF CONTENTS**</ins>

**Page**

RELEVANT PROCEDURAL HISTORY .................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 2

QUESTIONS INVOLVED ....................................................................................................... 6

ARGUMENT ........................................................................................................................... 6

I.  STANDARD OF REVIEW ........................................................................................... 6

II. PLAINTIFF'S FAIR CREDIT BILLING ACT CLAIM (COUNT 1) MUST BE DISMISSED BECAUSE PLAINTIFF FAILED TO COMPLY WITH THE FCBA'S PROCEDURAL REQUIREMENTS AND BANA REASONABLY INVESTIGATED THE CHARGE AT ISSUE IN ANY EVENT .................................................................. 7

    A.  Plaintiff's Notification Of The Alleged Billing Error Was Untimely. ................... 8

    B.  BANA Initially Complied With FCBA Requirements, And Regulation Z Precludes Plaintiff From Reasserting The Alleged Billing Error Merely Because BANA Rebilled The Charge At Issue. ................................................................... 10

    C.  Even If Plaintiff Had Complied With The FCBA's Procedural Requirements, Which He Did Not Do, BANA Conducted A Reasonable Investigation Of The Charge At Issue. .................................................................................................. 14

III. Plaintiff's Section 1643 TILA Claim (count 2) Fails Because This Provision Does Not Impose Liability on Creditors, Such As BANA, Or Give Rise To A Cause Of Action By Cardholders, Such As Plaintiff ......................................................................... 16

IV. In the Alternative, Plaintiff's Pattern Or Practice Allegations Must Be Stricken As They Are Irrelevant To ANY FCBA Claim ................................................................. 17

CONCLUSION ..................................................................................................................... 20

Plaintiff William Krieger ("Plaintiff") brings this action against Defendant Bank of America, N.A. ("BANA") based on BANA's refusal to provide a chargeback to Plaintiff's VISA credit card account for a one-time $657.00 charge made to purchase a Western Union money transfer. Plaintiff asserts that he never authorized the charge, but Western Union maintains that it was a legitimate transaction. BANA initially credited Plaintiff's account for the charge, but later rebilled it upon receipt of additional information provided by Western Union.

Plaintiff asserts two federal claims against BANA for its handling of the charge under the Fair Credit Billing Act, 15 U.S.C. § 1666 ("FCBA") (Count 1) and Section 1643 of the Truth in Lending Act, 15 U.S.C. § 1643 ("TILA") (Count 2). As explained in detail below, both claims fail as a matter of law, requiring their dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).

## RELEVANT PROCEDURAL HISTORY

Plaintiff filed his Amended Complaint (**Exhibit A** hereto) in the Court of Common Pleas of Northumberland County, Pennsylvania on April 29, 2016. BANA removed the action to this Court on May 9, 2016. BANA now moves to dismiss the Amended Complaint pursuant to Rule 12(b)(6).

## STATEMENT OF FACTS[1]

Sometime prior to the commencement of this action, Plaintiff opened a credit card account with BANA. (Am. Compl. ¶ 9.) On or about June 27, 2015, Plaintiff's credit card was charged $657.00 for the purchase of a Western Union money transfer (the "Western Union Charge"). (Am. Compl. ¶¶ 12, 18-19.) Plaintiff alleges that he did not authorize or make this charge. (Am. Compl. ¶ 20.)

However, Plaintiff acknowledges that on the same day that this charge was made he was experiencing computer problems which required him to speak with a computer consultant. (Am. Compl. ¶¶ 11-12.) Plaintiff spoke by telephone to an individual claiming to be from Microsoft, who told Plaintiff he could help fix Plaintiff's computer. (Am. Compl. ¶¶ 12-13 & Ex. F.) This person diagnosed Plaintiff's computer with a virus and requested access to Plaintiff's computer. (Am. Compl. ¶ 13.) Plaintiff provided the access. (Am. Compl. ¶¶ 13-14.)

While Plaintiff's computer was being worked on, Plaintiff's daughter returned home and, becoming suspicious of who was on the phone with her father, she disconnected the computer from the internet. (Am. Compl. ¶¶ 14-16.) As she disconnected the computer Plaintiff saw what appeared to be his credit card number displayed on the computer screen. (Am. Compl. ¶ 16.) Notably, Plaintiff

---

[1] The facts set forth herein are taken from the factual allegations in the Amended Complaint, which are accepted as true only for purposes of this motion.

does not allege that the computer consultant obtained his credit card number without Plaintiff's consent, and no such inference should be drawn.[2]

Several hours after Plaintiff's phone call with the computer consultant, Plaintiff recognized that his computer was still malfunctioning.  (Am. Compl. Ex. F.)  Plaintiff thereafter called Microsoft and during that call he learned that the computer consultant that he spoke with about the computer earlier that day was not a Microsoft employee.  (Am. Comp. ¶ 17.)

Plaintiff then contacted BANA to determine if any unauthorized charges were made on his credit card.  (Am. Compl. ¶ 18.)  Plaintiff was told then about the Western Union Charge.  (Am. Compl. ¶ 19.)  Plaintiff informed BANA's customer service department that he did not authorize the Western Union Charge and that his account had been compromised.  (Am. Compl. ¶ 21.)  In response, BANA told Plaintiff that upon receipt of his billing statement he should contact BANA's customer service department.  (Am. Compl. ¶ 23.)

BANA issued Plaintiff a billing statement for the period June 19 to July 18, 2015 on which the Western Union Charge appeared.   (Am. Compl. Ex. A.)

---

[2]  If the Amended Complaint could somehow state a claim upon which relief could be granted, which it does not, BANA avers that the evidence, including Plaintiff's own admissions, would show that Plaintiff purposefully provided his credit card number to the computer consultant.

Plaintiff alleges that he received this statement on or about July 29, 2015.[3]  (Am. Compl. ¶ 25.)  That day he called BANA about the Western Union Charge.  (Am. Compl. ¶¶ 25-27.)  BANA told Plaintiff it could not do anything about the Western Union Charge.  (Am. Compl. ¶ 28.)  BANA issued a letter to that effect, noting that it completed its investigation of the Western Union Charge and was unable to determine that a billing error occurred.  (Am. Compl. Ex. B.)  However, later that same day, BANA called Plaintiff to inform him that it would issue a credit to Plaintiff's account.  (Am. Compl. ¶ 30.)  BANA then sent a letter stating that it would issue a credit and considered the matter resolved, but that the merchant (Western Union) has the opportunity to provide additional documentation to support why they feel the transaction is valid.  (Am. Compl. Ex. A.)

On August 10, 2015, Western Union provided a Chargeback Response to BANA that (a) documented the information provided to Western Union at the time of the money transfer, including Plaintiff's name, address, email address, IP address and credit card number, (b) showed a transfer that took place from Western Union to a Mr. Amit Rajak in Mumbai, India, (c) proposed that the Western Union

---

[3]   BANA's records show that Plaintiff received the billing statement prior to July 29, 2015, but for purposes of this Motion Plaintiff's allegation is accepted as true.  An earlier date of receipt of the billing statement by Plaintiff is not material in any event, as Plaintiff still failed to provide written notice of the purported "billing error" within sixty (60) days of the bank's transmission of the billing statement as required by FCBA.

Charge was a "legitimate transaction," and (d) requested reversal of the chargeback. (Am. Compl. Ex. H at p. 3.)

In response, BANA issued a letter to Plaintiff dated September 11, 2015, noting that BANA's investigation of the Western Union Charge was completed, the merchant (Western Union) provided a copy of the sales slip as verification of the charge, and that as a result BANA considered the transaction valid. (Am. Compl. Ex. D.) BANA's letter further stated that the Western Union Charge would be rebilled and would appear on Plaintiff's next monthly billing statement. (Am. Compl. Ex. D.) The Western Union Charge appeared on Plaintiff's next billing statement issued for the period August 19 to September 18, 2015. (Am. Compl. ¶ 41 & Ex. E.)

Thereafter, Plaintiff sent a letter disputing the Western Union Charge, which letter was not received by BANA until September 29, 2015 (more than sixty (60) days after Plaintiff received the June 19 to July 18, 2015 billing statement first displaying the Western Union Charge). (Am. Compl. ¶¶ 47-49 & Ex. F.) On October 3, 2015, BANA acknowledged receipt of Plaintiff's letter and informed Plaintiff that it was researching the dispute. (Am. Compl. ¶ 50 & Ex. G.) Six days later, on October 9, 2015, BANA issued a letter notifying Plaintiff of the outcome of its investigation. (Am. Compl. ¶ 51.) BANA's letter stated that the bank had re-examined Plaintiff's recent inquiry regarding the Western Union Charge, but

was regrettably unable to obtain credits to Plaintiff's account and was unable to assist Plaintiff further. (Am. Compl. ¶ 52 & Ex. H.)  The letter further noted that the information provided by the merchant (Western Union) matches the home address, phone number and email address listed on Plaintiff's account. (Am. Compl. ¶ 52 & Ex. H.)

## QUESTIONS INVOLVED

1. **FCBA Claim (Count 1): Has Plaintiff pled facts sufficient to establish all of the elements of a FCBA claim? (No)**

2. **TILA § 1943 Claim (Count 2): Does TILA § 1643 provide cardholders with a private right of action? (No)**

3. **In the alternative, should Plaintiff's pattern or practice allegations (Paragraphs 64-66) be stricken pursuant to F.R.C.P. 12(f)? (Yes)**

## ARGUMENT

## I. STANDARD OF REVIEW

Rule 12(b)(6) provides that a party may file a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  With a motion to dismiss, the Court must determine if, taking the factual allegations as true, the plaintiff is entitled to relief. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009) (citations omitted).  Thus, a complaint may only survive a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

This Court must engage in a two-part analysis. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009); *Fowler,* 578 F.3d at 210-11. The Court must first separate factual allegations from legal conclusions. *Iqbal,* 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Conclusory allegations are not entitled to the assumption of truth and should be stricken in the dismissal analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The Court must then determine whether the factual allegations are sufficient to show that plaintiff has a "plausible claim for relief." *Iqbal,* 129 S.Ct. at 1950. A complaint that merely allows the court to infer that a claim is possible rather than plausible cannot survive. *Id.*

## II.  PLAINTIFF'S FAIR CREDIT BILLING ACT CLAIM (COUNT 1) MUST BE DISMISSED BECAUSE PLAINTIFF FAILED TO COMPLY WITH THE FCBA'S PROCEDURAL REQUIREMENTS AND BANA REASONABLY INVESTIGATED THE CHARGE AT ISSUE IN ANY EVENT

The Fair Credit Billing Act or FCBA, which is part of the Truth in Lending Act or TILA, requires a creditor to correspond with a consumer and resolve billing differences in certain situations. *Pinner v. Schmidt*, 805 F.2d 1258, 1264 (5th Cir. 1986); *Knowles v. Capital One Bank (USA), N.A.*, No. 4:11-CV-1257, 2015 WL 3405288, at *4 (M.D. Pa. May 26, 2015).[4] "To state a viable claim under the FCBA, a debtor must allege '(1) the existence of a billing error, (2) timely

---

[4]  Opinions reported in Westlaw or Lexis are attached hereto as **Exhibit B**.

notification of the billing error, and (3) failure of the bank issuing the card to comply with the procedural requirements of [15 U.S.C. § 1666(a)(A) and (B)].'" *Hill v. Chase Bank USA, N.A.*, No. 2:07-CV-82, 2010 WL 107192, at \*5 (N.D. Ind. Jan. 6, 2010) (quoting *Cunningham v. Bank One*, 487 F. Supp. 2d 1189, 1191 (W.D. Wa. 2007)).

In the matter *sub judice*, Plaintiff failed to allege facts sufficient to establish each of these elements.

A.    Plaintiff's Notification Of The Alleged Billing Error Was Untimely.

"Without a valid and timely notice of billing error, there's no duty to comply with § 1666(a)(A) and (B), and no violation of those sections." *Hill*, 2010 WL 101192, at \*6; *see also Dunkinson v. Citigroup, Inc.*, No. 10-6489, 2012 U.S. Dist. LEXIS 1019, at \*10 (D.N.J. Jan. 3, 2012) (holding that a "creditor's obligations are not triggered" unless an obligor complies with the timely notice requirement).  To satisfy the FCBA's timely notice requirement, a cardholder must provide *written* notice of the alleged billing error to the creditor.  15 U.S.C. §  1666(a).  Telephonic notice of the alleged billing error is insufficient.  *See Knowles*, 2015 WL 3405288, at \*4 (noting the absence of any citation to laws allowing for telephonic notice). The requisite written notice provided by the cardholder must be *received* by the credit card issuer at the address disclosed on the billing statement within sixty (60) days after the credit card issuer transmitted its billing statement containing the

- 8 -

charge at issue to the cardholder.  15 U.S.C. § 1666(a).  The sixty (60) days begins to run from the date the billing statement was sent by the credit card issuer, *i.e.*, the date the statement was issued, not from the date when the cardholder received the billing statement.  *See Citibank (SD), N.A. v. Beckerman*, 856 N.Y.S.2d 496, at *2 (N.Y. Sup. Ct. 2008); *see also Knowles*, 2015 WL 3405288, at *4 (noting that the notice must be received within sixty (60) days of the *issuance* of the billing statement).

Here, based on the allegations of the Amended Complaint and exhibits thereto, it is obvious that Plaintiff has failed to satisfy the FCBA's timely notice requirement.  Plaintiff claims to have received the billing statement which first displayed the Western Union Charge at issue on July 29, 2015.  (Am. Compl. ¶ 25.)  For that billing statement to have been received by Plaintiff on July 29, 2015, it must have been mailed, *i.e. issued*, prior to that date – presumably on or about the close of the billing period on July 18, 2015.  However, even if the billing statement issued no earlier than July 29, 2015, Plaintiff's notification of a billing error was untimely.

The only document identified by Plaintiff as his written notice of billing error was his letter requesting a credit for the Western Union Charge mailed on September 26, 2015.  (Am. Compl. ¶ 47-49 & Ex. F.)  This letter, however, was not received by BANA until September 29, 2015.  (Am. Compl. ¶¶ 47-49 & Ex.

F.)  This was *at least* sixty-two (62) days after BANA issued the billing statement first displaying the Western Union Charge.  Accordingly, Plaintiff's notice of a billing error was untimely and, therefore, there was no duty for BANA to comply with § 1666(a)(A) and (B) and there can be no violation of those sections.

> B.     BANA Initially Complied With FCBA Requirements, And Regulation Z Precludes Plaintiff From Reasserting The Alleged Billing Error Merely Because BANA Rebilled The Charge At Issue.

Notwithstanding the fact that Plaintiff's initial telephonic notice of the alleged billing error dispute regarding the Western Union Charge did not comply with the FCBA's notice requirements and, therefore, did not give rise to an obligation for BANA to respond, BANA nevertheless responded to such notice consistent with FCBA requirements.

Under the FCBA, a creditor who received a timely notice of a billing error must either (i) make appropriate corrections to the obligor's account, or (ii) send a written explanation, after having conducted an *investigation*, setting forth to the extent applicable the reasons why the creditor believes the account was correctly shown in the statement.  15 U.S.C. § 1666(a)(B) (emphasis added).  Regulation Z, promulgated to implement the FCBA, requires a creditor to take one of the two foregoing actions within two complete billing cycles after receiving a billing error notice.  12 C.F.R. § 226.13(c)(2).

BANA satisfied the foregoing obligations within two complete billing cycles of receiving Plaintiff's telephonic notice of a billing error as demonstrated by the allegations in the Amended Complaint.  Initially, on July 29, 2015, BANA issued a letter referencing its *investigation* and noting that the bank was unable to identify a billing error.  (Am. Compl. Ex. B.)  Later that same day, BANA determined to credit Plaintiff's credit card account for the Western Union Charge, but informed Plaintiff:

> - Please understand that although we filed a claim on your behalf and we consider your dispute(s) resolved, the merchant does have the opportunity to review the information and provide additional documentation to support why they feel the transaction(s) is valid.
>
> - Should we receive additional information from the merchant, we'll forward relevant documentation to you and let you know if additional information is needed to support your dispute(s).

(Am. Compl. ¶ 32 & Ex. B at p. 3.)  Thus, BANA made appropriate corrections to Plaintiff's account in compliance with 15 U.S.C. § 1666(a)(B)(i).  Alternatively, BANA can be viewed as having completed its investigation as required by the FCBA and Regulation Z.  *See Humphrey v. U.S. Bank, N.A.*, No. 11-CV-272, 2012 WL 3686272, at *5 (N.D. Okla. Aug. 24, 2012) (holding that upon Capital One's decision to issue a credit following its investigation of a disputed charge, which decision was subject to the possibility of rebilling upon receipt of additional

information from the merchant, "the investigation was completed within two billing cycles and was reasonable, as required by the statute and regulation").

Plaintiff's allegations regarding BANA's later decision to rebill the Western Union Charge following receipt of additional information from the merchant (Western Union) does not alter the fact that BANA complied with FCBA requirements, even though it had no obligation to do so since notice of the billing error was improperly provided by telephone. Moreover, Plaintiff's attempt to reassert the Western Union Charge as a billing error based on BANA's rebilling of that charge is expressly precluded by Regulation Z, 12 C.F.R. § 226.13(h), which precludes reassertion of substantially the same billing error previously listed on an earlier billing statement. *See Humphrey*, 2012 WL 3686272, at *5. Regulation Z provides in relevant part:

> (h) *Reassertion of billing error.* A creditor that has fully complied with the requirements of this section has no further responsibilities under this section . . . if a consumer reasserts substantially the same billing error.

12 C.F.R. § 226.13(h).

The *Humphrey* decision applying Regulation Z is on point. In *Humphrey*, the plaintiff challenged a $415 appraisal fee charge that U.S. Bank made to the plaintiff's Capital One credit card, a charge which Plaintiff described as fraudulent. *Id.* at *1, *3. After an investigation, Capital One sent plaintiff a letter informing the plaintiff that his account was credited for the $415 charge. *Id.* at *2, 5. Capital

One notified the plaintiff that it considered the matter closed unless the merchant (U.S. Bank) resubmitted the charge, in which case the account would be rebilled for the amount of the credit. *Id.* The *Humphrey* court held that at that point Capital One had performed the requisite investigation required by the FCBA and Regulation Z. *Id.* Thereafter, the merchant (U.S. Bank) resubmitted the charge, Capital One then rebilled it and the plaintiff then asserted a billing error for the rebilled charge. *Id.* In support of the plaintiff's FCBA claim, the plaintiff argued that the merchant's resubmission of the charge initiated a dispute that "'was substantially different from the original dispute'" and thus did not implicate Regulation Z's prohibition on reassertion of a billing errors. *Id.* (citation to brief omitted). The *Humphrey* court disagreed, holding that "[t]he charge was by the same vendor, for the same amount, for the same service" and under Regulation Z, "the manner in which Capital One handled the rebilling is not subject to the requirements of the FCBA or Regulation Z." *Id.*

Here, like in *Humphrey*, Plaintiff is seeking to challenge the bank's rebilling of a charge by the same vendor, for the same amount, for the same service. However, as the *Humphrey* court aptly held, the manner in which this charge was rebilled by the creditor (here BANA) is not subject to the requirements of the FCBA or Regulation Z. Accordingly, Plaintiff's attempt to assert his FCBA claim

based on BANA's rebilling of the Western Union Charge must be rejected, and Plaintiff's FCBA claim accordingly must be dismissed.

> C. Even If Plaintiff Had Complied With The FCBA's Procedural Requirements, Which He Did Not Do, BANA Conducted A Reasonable Investigation Of The Charge At Issue.

Plaintiff conclusorily alleges that BANA failed to *reasonably* investigate his alleged billing error dispute regarding the Western Union Charge. The facts alleged in the Amended Complaint and exhibits thereto demonstrate otherwise.

Regulation Z describes the "investigation" to be conducted before a credit card issuer provides its determination not to correct an alleged billing error as one that must be "reasonable." 12 C.F.R. § 226.13(f). Regulation Z, however, does not set forth specific activities that must be performed as part of a credit card issuer's investigation. Some courts have nevertheless remarked on the minimal level of investigation required by a credit card issuer. A creditor must:

> make a reasonable attempt to construe the consumer's complaint, investigate the claim so construed, and report back to the consumer within 90 days as to the merit of this apparent claim. There is, in other words, no penalty for "wrong guesses" made in good faith; the federal statute establishes only the procedural framework for dispute resolution, and does not concern itself with the substantive outcome of this process."

*Pierce v. JP Morgan Chase, N.A.*, Civ. A. No. 11–00102, 2012 WL 3610776, at *6 (S.D. Ala. Aug. 21, 2012) (quoting *Burnstein v. Saks Fifth Ave. & Co.*, 208 F. Supp. 2d 765, 775 (E.D. Mich. 2002)).

In line with this framework, even if Plaintiff had complied with the FCBA requirements triggering an obligation by BANA to conduct a reasonable investigation, BANA did in fact do so.   Plaintiff attached to the Amended Complaint multiple letters referencing the bank's evolving investigation and examination of the alleged billing error pertaining to the Western Union Charge which were sent by the bank to Plaintiff on July 29, September 11 and October 9, 2015.   That investigation led BANA to issue a credit to Plaintiff's account for the Western Union Charge on July 29, 2015, before later rebilling the charge based on information subsequently obtained from the merchant (Western Union).   Plaintiff himself acknowledges that BANA conducted an investigation, but baldly characterizes it as "not reasonable."   (Am. Compl. ¶ 62.)   Plaintiff does not, however, say specifically what more BANA was legally required to do to comply with the FCBA's investigation requirement.   Nor does Plaintiff point to any provision of the FCBA or Regulation Z that specifies what more BANA should have done.   Instead, Plaintiff conclusorily asserts that the investigation was not reasonable because he does not agree with BANA's ultimate conclusion, which was based in part on the information it received from Western Union, that no credit could be obtained for the Western Union Charge.   However, the FCBA is not concerned with whether the conclusion that BANA reached was actually right or wrong, but instead is only concerned with ensuring that BANA investigated

whether the Western Union Charge was an unauthorized charge, which BANA clearly did.

## III. PLAINTIFF'S SECTION 1643 TILA CLAIM (COUNT 2) FAILS BECAUSE THIS PROVISION DOES NOT IMPOSE LIABILITY ON CREDITORS, SUCH AS BANA, OR GIVE RISE TO A CAUSE OF ACTION BY CARDHOLDERS, SUCH AS PLAINTIFF

Based on the bank's decision not to provide a credit for the $657 Western Union Charge, Plaintiff asserts a claim against BANA for violation of 15 U.S.C. § 1643 of the TILA, which limits a cardholder's liability for unauthorized charges to $50.00. This claim fails, however, because TILA § 1643 does not provide cardholders, such as Plaintiff, with a private right of action against credit card issuers, such as BANA. *See Azur v. Chase Bank, USA, N.A.*, 601 F.3d 212, 217 (3d Cir. 2010).

As the Third Circuit has made clear, TILA § 1643 "simply limits the liability of cardholders, under certain circumstances, to a maximum of $50 for unauthorized charges." *Azur*, 601 F.3d at 217 (quoting *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 175 (3d Cir. 2008)). In other words, it "'imposes liability only upon the cardholder.'" *Id.* "This is clear from the statute's language: 'A cardholder shall be liable for the unauthorized use of a credit card only if. . . .'" *Azur*, 601 F.3d at 217 (quoting 15 U.S.C. § 1643(a)). "Accordingly, the statute's plain meaning places a ceiling on a cardholder's obligations under the law and thus limits a card issuer's ability to sue a cardholder to recover fraudulent purchases."

*Azur*, 601 F.3d at 217.  "The language of § 1643 does not, however, enlarge a card issuer's liability . . . ."  *Id.*  "Indeed, § 1643 does not address, nor is it even concerned with, the liability of an issuer . . . ."  *Id.* (quoting *Sovereign Bank*, 533 F.3d at 175).

Accordingly, Plaintiff's claim against BANA (a card issuer) for an alleged violation of TILA § 1643 is not cognizable and must be dismissed.

## IV.   IN THE ALTERNATIVE, PLAINTIFF'S PATTERN OR PRACTICE ALLEGATIONS MUST BE STRICKEN AS THEY ARE IRRELEVANT TO ANY FCBA CLAIM[5]

Plaintiff alleges as part of its FCBA claim (Count 1) that BANA's actions with regard to its investigation and rebilling of the Western Union Charge were part of a "pattern or practice" of failure to comply with the FCBA.  (Am. Compl. ¶¶ 64-65.)  Plaintiff further alleges that failing to timely notify a merchant that an unauthorized charge has been made is not a reasonable practice or procedure.  (Am. Compl. ¶ 66).  These pattern or practice allegations have no relevance to the elements of a FCBA claim and BANA therefore moves to strike them pursuant to Federal Rule of Civil Procedure 12(f).

While certain provisions of the TILA impose statutory damages on a defendant where there is a pattern or practice of noncompliance with the statute,

---

[5]   The Court need consider the arguments in this Section of BANA's Memorandum of Law only if Plaintiff is somehow deemed to have sufficiently stated a FCBA claim upon which relief can be granted.

*see, e.g.*, the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. § 2605(f), the FCBA § 1666 is not one of those provisions.  Thus, Plaintiff's pattern or practice allegations constitute immaterial, impertinent and/or scandalous matter which may be stricken pursuant to Rule 12(f).

"The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial[.]"  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*,  510 U.S. 517 (1994); *see also McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002) ("The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters.") (citation omitted).  A trial court has broad discretion in determining whether to grant or deny a motion to strike.  *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1251 (M.D. Fla. 2013).  Although motions to strike are generally disfavored, because they often serve to delay, motions to strike should be granted where, as here, they remove unnecessary clutter from the case, thereby serving to expedite, not delay.  *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989).

Further, motions to strike should be granted "when 'the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'"  *Id.* (quoting *Medevac MidAtlantic, LLC*

*v. Keystone Mercy Health Plan*, 817 F. Supp. 2d 515, 520 (E.D. Pa. 2011) (internal citation omitted)).  "Prejudice results where the challenged allegation has the effect of confusing the issues or is so lengthy and complex that it places an undue burden on the responding party."  *Holmes v. Housing Auth. Of Joliet*, No. 14 C 3132, 2015 WL 1826676, at *3 (N.D. Ill. Apr. 20, 2015) (internal citation omitted).

Here, it is obvious that Plaintiff's pattern or practice allegations confuse the issues.  Moreover, they will result in the unnecessary expansion of discovery, thus prejudicing BANA.  Indeed, Plaintiff openly acknowledges that "[t]he factual statements will likely have evidentiary support after reasonable opportunity for further investigation or discovery."  (Am. Compl. ¶ 64.)  In other words, the pattern or practice allegations do not yet have evidentiary support, but Plaintiff seeks to take discovery to find out if they do.  For what purpose?  This might be fine if the allegations had some relevance to the case, but they do not.  Thus, allowing the pattern or practice allegations to remain clearly prejudices BANA.

Accordingly, because the pattern or practice allegations do not have evidentiary support and because they are irrelevant to the claims asserted by Plaintiff in any event, the Court should strike these allegations set forth in Paragraphs 64 through 66.

## CONCLUSION

For the reasons set forth above, BANA respectfully moves this Court pursuant to Fed. R. Civ. P. 12(b)(6):  (1) to dismiss the Amended Complaint with prejudice; and (2) for such further relief as is just and proper.

Respectfully Submitted,


*/s/ Robert E. Warring*
Robert E. Warring
Attorney I.D. No. 209326
REED SMITH LLP
Three Logan Square
1717 Arch Street
Philadelphia, PA  19103
215-851-8100

*Attorneys for Defendant*
*Bank of America, N.A.*

Dated:  May 16, 2016

**CERTIFICATE OF CONFORMANCE**
**WITH M.D. PA. LOCAL RULE 7.8(b)(2)**

I, Robert E. Warring, hereby certify pursuant to Local Rule 7.8(b) that the foregoing Memorandum of Law in Support of Motion to Dismiss Plaintiff's Amended Complaint does not exceed 5,000 words. Specifically, the word count function of my word-processing software indicates that the text and footnotes in the body of this memorandum contain 4,629 words.

*s/ Robert E. Warring*
Robert E. Warring

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of May, 2016, I caused a true and correct copy of the foregoing Memorandum of Law in Support of Motion to Dismiss Plaintiff's Amended Complaint to be served via ECF upon the following:

Brett Freeman, Esquire
Sabatini Law Firm, LLC
216 N. Blakely Street
Dunmore, PA 18512
*Attorney for Plaintiff*

s/ Robert E. Warring
Robert E. Warring