# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| William Krieger,<br>              Plaintiff<br><br>v.<br><br><br>Bank of America, N.A.,<br>              Defendant | Docket No. 4:16-cv-830-MWB<br>(JUDGE MATTHEW W. BRANN)<br><br><br><br><br>ELECTRONICALLY FILED |

## PLAINTIFF'S BRIEF OPPOSING DEFENDANT'S MOTION TO DISMISS

*s/ Brett Freeman*

Brett Freeman
Bar Number PA308834
Attorney for Plaintiff
SABATINI LAW FIRM, LLC
216 N. Blakely St.
Dunmore, PA 18512
Phone (570) 341-9000
Facsimile (570) 504-2769
Email bfecf@bankruptcypa.com

# TABLE OF CONTENTS

Table of Contents ..................................................................ii

Table of Authorities.............................................................iv

Introduction and Procedural History.......................................1

Statement of Facts ...............................................................2

Questions Presented.............................................................7

Applicable Standard..............................................................9

Argument............................................................................11

   1. *The writing and timeliness requirements contained in the Fair Credit Billing Act do not apply when a consumer informs a card issuer about unauthorized usage.*......................................11

   2. *Even if writing and time requirements did apply, Plaintiff's dispute was still timely because Defendant received written notice of the dispute within 60 days of when it transmitted the first statement with the reinstated charge.* .............................................14

   3. *Defendant did not conduct a reasonable investigation*................22

   4. *Plaintiff does have a private right of action for violations of the unauthorized usage requirements in TILA.* ......................................30

   5. *Plaintiff has properly asserted a claim for violations of the Fair Credit Extension Uniformity Act and the Unfair Trade Practices and Consumer Protection Law.*..................................................37

     i.  Ascertainable Loss.................................................37

     ii.  Justifiable Reliance ...............................................39

*6. Defendant's alternative motion to strike should also be denied, as pattern or practice is relevant to the award of statutory damages.* ..... 41

Conclusion ............................................................................ 42

TABLE OF AUTHORITIES

## Cases

Alston v. Countrywide Financial Corp.,
    585 F.3d 753 (3d Cir. 2009)............................................................10

Azur v. Chase Bank, USA, Nat. Ass'n,
    601 F.3d 212 (3d Cir. 2010)...................................................... passim

Ballentine v. United States,
    486 F.3d 806 (3d Cir. 2007)............................................................10

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2006) ......................................................................10

Benner v. Bank of Am., N.A.,
    917 F. Supp. 2d 338 (E.D. Pa. 2013) .......................................38, 39

Bromfield v. HSBC Bank Nevada,
    2014 WL 183895 (D. Or. Jan. 13, 2014).......................................36

Brown v. Card Service Center,
    464 F.3d 450 (3rd Cir. 2006) ....................................................10, 39

Bruce v. First U.S.A. Bank, N.A.,
    103 F.Supp.2d 1135 (E.D.Mo.2000) ..............................................29

Cushman v. Trans Union Corp.,
    115 F.3d 220 (3d Cir. 1997)......................................................25, 29

Davis v. Trans Union, LLC,
    526 F. Supp. 2d 577 (W.D.N.C. 2007) ...........................................29

Humphrey v. U.S. Bank, N.A.,
    2012 WL 3686272 (N.D. Okla. Aug. 24, 2012)..................16, 17, 27

*Oatway v. Am. Int'l Group, Inc.*,
  325 F.3d 184 (3d Cir. 2003) .......................................................... 10

*Ramadan v. Chase Manhattan Corp.*,
  156 F.3d 499 (3d Cir.1998) ........................................................... 22

*Rigby v. FIA Card Servs., N.A.*,
  490 F. App'x 230 (11th Cir. 2012) .................................... 17, 27, 28

*Rossman v. Fleet Bank (R.I.) Nat. Ass'n*,
  280 F.3d 384 (3d Cir. 2002) ........................................................... 22

*Roundtree v. Chase Bank USA, N.A.*,
  2014 WL 794800 (W.D. Wash. Feb. 27, 2014) .............................. 29

*Sovereign Bank v. BJ's Wholesale Club, Inc.*,
  533 F.3d 162 (3d Cir. 2008) ........................................................... 33

## Statutes

15 U.S.C. § 1640 ................................................................... passim

15 U.S.C. § 1643 ................................................... 30, 32, 33, 35

73 P.S. § 2270.4(b)(6)(i) .......................................................... 37

73 P.S. § 2270.5(a) ................................................................. 37

## Regulations

12 C.F.R. § 1026.11 ........................................................... 35, 40

12 C.F.R. § 1026.11(a) .............................................................. 35

12 C.F.R. § 1026.12 .............................................................. passim

12 C.F.R. § 1026.12(b) .......................................................... passim

12 C.F.R. § 1026.12(b)(1)(ii) ....................................................... 12

12 C.F.R. § 1026.13 ............................................................ passim

12 C.F.R. § 1026.13(b)(1) ........................................................ 11

INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff's amended complaint alleged that Defendant violated the Truth in Lending Act ("TILA"), the Fair Credit Billing Act ("FCBA"), the Fair Credit Extension Uniformity Act ("FCEUA"), and the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). These violations occurred after Plaintiff notified Defendant that there had been authorized usage of his credit card. After receiving this notification, Defendant failed to conduct a reasonable investigation, and failed to limit Plaintiff's liability for the unauthorized usage.

Rather, Defendant's investigation consisted of nothing more than confirming that the individual who used Plaintiff's credit card provided Plaintiff's address, telephone number, *or* email address. Because this investigation was not reasonable, it violated TILA. Furthermore, because Defendant demanded payment from Plaintiff in excess of the maximum $50.00 limitation for unauthorized usage, Defendant committed a separate violation of TILA. Finally, by demanding an amount that it was not entitled to collect, Defendant violated the FCEUA, which constitutes a per-se violation of the UTPCPL.

Defendant has filed a motion to dismiss Plaintiff's amended complaint, and a supporting brief. Plaintiff now files this brief in opposition.

<u>STATEMENT OF FACTS</u>

Plaintiff entered into an open-ended credit agreement with Defendant for a BankAmericard Visa account that Plaintiff used for personal, family, and household purposes (the "Account").[1] Defendant thereafter and at all times relevant to this case, extended open-end consumer credit to Plaintiff and assessed finance charges on the Account.

On June 27, 2015, Plaintiff's computer was malfunctioning. At roughly the same time, Plaintiff received a telephone call from an unknown third-party (the "Caller") claiming to be a Microsoft employee. The Caller told Plaintiff that his computer was infected with a virus and that in order to remove the virus, the Caller would need to remotely access Plaintiff's computer. Plaintiff believed that the Caller was an actual Microsoft employee and Plaintiff followed his instructions to

---

[1] Plaintiff's statement of facts are based on the allegations contained in his amended complaint, and the documents attached to that complaint.

allow him access to Plaintiff's computer. Plaintiff was told that the computer would need to be left alone for a few hours while the Caller removed the virus. When Plaintiff's daughter arrived home, Plaintiff informed her of the situation with his computer. Plaintiff's daughter told Plaintiff that the Caller was most likely not a Microsoft employee, and that the Caller was probably trying to scam Plaintiff. Plaintiff's daughter then disconnected Plaintiff's computer from the internet to stop the Caller from further accessing Plaintiff's computer. When the computer was disconnected, Plaintiff saw the number associated with the Account on the computer screen.

Immediately after the computer was disconnected, Plaintiff and his daughter called Microsoft and were informed that the Caller was not a Microsoft employee. That same day, Plaintiff called Defendant to ask if any unauthorized charges were made on his credit card. Defendant informed Plaintiff that a Western Union money transfer was purchased that day in the amount of $657.00 (the "Charge"). Plaintiff immediately informed Defendant that the Charge was not authorized by anyone with authority to make that purchase. Even though Plaintiff informed Defendant that the Charge was unauthorized the same day that the

Charge was made, Defendant refused to do anything at that time. Instead, Defendant informed Plaintiff that he had to again contact Defendant after he received his next written billing statement.

On or about July 29, 2015, Plaintiff received a copy of his billing statement containing the Charge. Plaintiff then called Defendant's customer service department again on July 29, 2015 as he had been directed to by Defendant during the June 27, 2015 phone call. During this phone call, Defendant informed Plaintiff that it could not do anything about the Charge because Western Union had already authorized payment. Thereafter, Plaintiff told Defendant that he wanted to cancel the Account and that he was not happy with Defendant's customer service. Later on July 29, 2015, Defendant placed a phone call to Plaintiff and advised him that Defendant would remove the Charge from the Account.

Plaintiff later received two letters from Defendant, each of which was dated July 29, 2015. The two letters offered conflicting information; the first letter stated that Defendant was "unable to determine that a billing error occurred based on the information or documentation available to us." Presumably, this letter was sent as a result of

Plaintiff's first call, during which Defendant had refused to consider that the charge was unauthorized and Plaintiff had asked to have his account closed.

The second letter advised Plaintiff that Defendant had "issued credit(s) to [Plaintiff's] account for the disputed charge(s) and credit [the] account for any interest charges and fees [he] received because of the disputed charge(s)." The letter also stated in relevant part "[p]lease understand that although we filed a claim on your behalf and ***we consider your dispute(s) resolved***, the merchant does have the opportunity to review the information and provide additional documentation to support why they feel the transaction(s) is valid." (emphasis added). The letter also advised Plaintiff that "[s]hould we receive additional information from the merchant, we'll forward relevant documentation to you and let you know if additional information is needed to support your dispute." Based on the information in this letter, Plaintiff considered that his dispute regarding the Charge to have been resolved.

More than a month after Plaintiff received the letter informing him that his dispute was resolved, Defendant sent Plaintiff a letter

stating that Defendant now considered the Charge valid because "[t]he information provided by the merchant matches the home address, phone number, or email address we have listed on your account." Additionally, Defendant provided a copy of the Western Union Chargeback Response to Plaintiff, which listed Amit Rajak in Mumbai, India as the recipient of the money order. Plaintiff has never been to India and does not know anyone named Amit Rajak.

Thereafter, Plaintiff received a billing statement for the period of August 19, 2015 through September 18, 2015 that reasserted the Charge. After receiving this billing statement, on or about September 23, 2015, Plaintiff called Western Union to see if there was anything Western Union would do about the dispute. During this telephone call, Western Union advised Plaintiff that it did not pay out the Charge until August 1, 2015, which is over one month after Plaintiff first informed Defendant of the unauthorized use, and is even *after Defendant had informed Plaintiff that Western Union had already authorized the payment.*

After receiving the billing statement that reasserted the Charge, Plaintiff mailed Defendant a written notice of billing error. This notice

was mailed on September 26, 2015 and was received by Defendant on September 29, 2015. Therefore, Defendant received the notice roughly six days after Plaintiff received the billing statement that reinstated the Charge. In this written notice, Plaintiff specifically described the circumstances outlined above demonstrating that the Charge was unauthorized. However, on October 9, 2016, Defendant sent Plaintiff another letter validating the charge because "[t]he information provided by the merchant matche[d] the home address, phone number, or email address [Defendant] ha[d] listed on [Plaintiff's] account."

QUESTIONS PRESENTED

1. Whether Plaintiff was required to comply with the time and writing requirements of the FCBA to inform Defendant of the unauthorized usage.

**SUGGESTED ANSWER:** No. Plaintiff has claimed that there was unauthorized usage of his credit card. Regulation Z is clear that the time and writing requirements of the FCBA do not apply for this type of error.

2. Whether Plaintiff nevertheless complied with the time and writing requirements of the FCBA.

7

**SUGGESTED ANSWER:** Yes. Defendant resolved Plaintiff's initial telephonic dispute in his favor, and credited Plaintiff's account for the disputed charge. Thereafter, Defendant reasserted the charge. Plaintiff timely disputed the reassertion of the disputed charge.

3. Whether Plaintiff has adequately alleged that Defendant did not conduct a "reasonable" investigation.

**SUGGESTED ANSWER:** Yes. Plaintiff has alleged that Defendant's investigation was not reasonable, and he has alleged that this investigation consisted solely of determining whether the unauthorized user of his credit card provider his address, telephone number, *or* email address. Where a consumer protection statute requires an entity to conduct an investigation, the issue of whether the purported investigation was reasonable is a question of fact for the jury.

4. Whether Plaintiff can maintain a claim to recover excess funds that he paid due to the unauthorized usage of his credit card.

**SUGGESTED ANSWER:** Yes. The Third Circuit case Defendant has relied upon is readily distinguishable from the present situation. And, Regulation Z mandates that a consumer can recover for excess payments made to a credit card issuer.

5. Whether Plaintiff has adequately alleged the elements for his claims under the FCEUA and the UTPCPL.

**SUGGESTED ANSWER:** Yes. Plaintiff has alleged that he suffered an ascertainable loss as a result of Defendant sending him a statement with an inflated balance. And, although justifiable reliance should not be a requirement for a violation of the FCEUA, Plaintiff has nevertheless alleged that he justifiably relied on the statements sent by Defendant.

6. Whether Plaintiff's "pattern or practice" allegations should be stricken.

**SUGGESTED ANSWER:** No. Pursuant to the plain language of 15 U.S.C. § 1640, pattern or practice evidence is relevant in determining the amount of statutory damages that should be awarded. Thus, Plaintiff's allegations are proper.

APPLICABLE STANDARD

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) a court must accept all facts alleged in the complaint to be true and must construe them in the light most favorable to the non-moving party. *Alston v. Countrywide Financial Corp.*, 585 F.3d 753

(3d Cir. 2009). In addition, a court must resolve all reasonable inferences in the non-moving party's favor. *Brown v. Card Service Center*, 464 F.3d 450, 452 (3rd Cir. 2006)(citing *In re Rockefeller Ctr. Props. Sec. Litig.*, 311 F.3d 198 (3d Cir. 2002)).

A court may only grant a motion to dismiss for failure to state a claim under Rule 12(b)(6) if after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)(quoting *Oatway v. Am. Int'l Group, Inc.*, 325 F.3d 184, 187 (3d Cir. 2003)). A plaintiff is only required to provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2006). Thus, the ultimate inquiry for a 12(b)(6) motion is "not whether a plaintiff will ultimately prevail but whether he or she is entitled to offer evidence to support the claims." *Ballentine*, 486 F.3d at 810 (quoting *Oatway*, 325 F.3d at 187).

ARGUMENT

1. *The writing and timeliness requirements contained in the Fair Credit Billing Act do not apply when a consumer informs a card issuer about unauthorized usage.*

Defendant's primary challenge to Plaintiff's FCBA claim is that it believes Plaintiff did not provide timely *written* notice of the billing error within 60 days of Plaintiff's receipt of the first statement containing the error. However, what Defendant does not discuss is the impact that the *nature* of Plaintiff's dispute has on these procedural requirements. 12 C.F.R. § 1026.13 generally contains the procedural requirements that must be satisfied to trigger a creditor's obligations under the FCBA. This section of Regulation Z provides that a billing error notice is a written notice from a consumer that, *inter alia*, "[i]s received by a creditor at the address disclosed [by the creditor]. Not later than 60 days after the creditor transmitted the first periodic statement that reflects the alleged billing error." 12 C.F.R. § 1026.13(b)(1).

However, in the official interpretations to this section of the regulations, the Consumer Financial Protection Bureau has made clear that "[t]he consumer's rights under the billing error provisions in

§ 1026.13 are independent of the provisions set forth in § 1026.12(b) and

(c)." Official Interpretation to 13(c), *available at* http://goo.gl/FWA4HC,

last visited June 29, 2016. Thus, a review of 12 C.F.R. § 1026.12 is

necessary to determine when these procedural requirements do not

apply.

Relevant to the present matter is 12 C.F.R. § 1026.12(b), which

deals with the liability of a cardholder for unauthorized use. This

section specifically provides that a cardholder is only liable for, at most,

$50.00 of "unauthorized use" of the credit card.[2] 12 C.F.R.

§ 1026.12(b)(1)(ii). This section also discusses the type of notification

that is required regarding unauthorized use, and specifically provides

that:

> Notification to a card issuer is given when steps
> have been taken as may be reasonably required in
> the ordinary course of business to provide the card
> issuer with the pertinent information about the
> loss, theft, or possible unauthorized use of a credit
> card, regardless of whether any particular officer,
> employee, or agent of the card issuer does, in fact,
> receive the information. **Notification may be**

---

[2] "Unauthorized use" is defined as "the use of a credit card by a person,
other than the cardholder, who does not have actual, implied, or
apparent authority for such use, and from which the cardholder receives
no benefit." 12 C.F.R. § 1026.12(b)(1)(i). Plaintiff had adequately alleged
that the use was unauthorized. (Doc. 8 ¶¶ 21; 71-72.)

> **given, at the option of the person giving it, in person, by telephone, or in writing.**

12 C.F.R. § 1026(b)(3)(emphasis added). Thus, it is clear that, with respect to unauthorized usage, notification can be given orally. And, again, the comment to this subsection also states that: "[t]he liability protections afforded to cardholders in § 1026.12 do not depend upon the cardholder's following the error resolution procedures in § 1026.13. **For example, the written notification and time limit requirements of § 1026.13 do not affect the § 1026.12 protections.**" Third Official Interpretation to § 1026.12(b)(3), *available at* http://goo.gl/Wut2hP, last visited June 29, 2016 (emphasis added). Furthermore, the interpretations make it is clear that "[i]f a card issuer seeks to impose liability when a claim of unauthorized use is made by a cardholder, the card issuer **must** conduct a reasonable investigation of the claim." Third Official Interpretation to § 1026.12(b), *available at* http://goo.gl/Wcs2RD, last visited June 29, 2016 (emphasis added).[3]

---

[3] As discussed *infra*, there can be no doubt that Defendant sought to impose liability on Plaintiff for the unauthorized use, because it mailed Plaintiff a statement seeking to collect the Charge.

Thus, after a review of the regulations, it is clear that Defendant's argument that Plaintiff did not properly initiate a billing error dispute because the dispute was either oral or untimely is wrong. Regulation Z specifically mandates that "the written notification and time limit requirements of § 1026.13 do not affect the [unauthorized use] protections." Third Official Interpretation to § 1026.12(b)(3). As a result, Defendant's challenge must fail.

2. *Even if writing and time requirements did apply, Plaintiff's dispute was still timely because Defendant received written notice of the dispute within 60 days of when it transmitted the first statement with the* <u>reinstated</u> *charge.*

Even if 12 C.F.R. § 1026.12 did not relieve Plaintiff of the obligation to comply with the FCBA's procedural requirements when asserting a billing error for unauthorized use, Plaintiff nevertheless *did* comply with the procedural requirements. Defendant claims that Plaintiff's notice was untimely because Defendant did not receive the dispute until at least 62 days after it issued the July 18, 2015 statement—which is admittedly the first billing statement sent to Plaintiff displaying the Charge. However, while Plaintiff does not dispute Defendant's math, he does disagree with Defendant's choice as

to the relevant statement for purposes of calculating the "due date" for a written notice of error.

Prior to the issuance of the July 18, 2015 statement, Plaintiff contacted Defendant regarding the unauthorized use of his credit card. Defendant told Plaintiff to contact it after he received his billing statement. Upon receipt of the billing statement, Plaintiff again contacted Defendant regarding the unauthorized use of his credit card. As a result of this communication, Defendant credited Plaintiff's account for the Charge, and indicated the it "consider[ed] [the] dispute(s) resolved . . . ." (Doc. 8-3.) The following month, Defendant transmitted a statement to Plaintiff which *credited* the disputed charge. Thus, based on Defendant's representation to Plaintiff, Plaintiff had no reason to believe that there still was a billing error. Instead, Plaintiff reasonably believed that the dispute was resolved, and that he was not going to be billed for the unauthorized use of the card. After receiving this letter from Defendant, there would have been no reason for Plaintiff to have sent in a written dispute, as there was no longer anything to dispute.

However, in September of 2015, Defendant advised Plaintiff that it *now* considered the Charge to be valid. Then, on September 18, 2015 Defendant issued a statement to Plaintiff for the period of August 19, 2015 until September 18, 2015. In this statement Defendant included a new item for the Charge in the amount of $657.00.

A few days after receiving this statement, Plaintiff sent a written notice of billing error to Defendant. Defendant received that notice on September 29, 2015 – merely eleven days after the statement had been sent, and well within the relevant 60-day period.

Thus, the issue presented to this Court is *which* statement is the operative statement for purposes of starting the 60-day clock? Plaintiff submits that the September 18, 2015 statement is the relevant statement. The earlier statement is irrelevant because Defendant had withdrawn the charge that appeared on that statement.

Defendant does not cite to any cases addressing which statement would be the correct statement from which the 60-day clock would begin. The closest case Defendant has cited to addressing this issue is *Humphrey v. U.S. Bank, N.A.*, 2012 WL 3686272 (N.D. Okla. Aug. 24, 2012), where the consumer sent a timely notice of billing error, the

charge was removed, the charge was later reasserted, and the consumer sent a *second* notice of billing error regarding the same charge. The issue in that case was not whether the second notice of billing error was timely, it was instead whether the bank had to perform a second investigation of the same dispute. The court ultimately held that the creditor was not required to perform a second investigation. *Humphrey* simply has no relevance as to whether, if there has not already been a valid notice of billing error, a consumer may allege a billing error upon the institution's reassertion of a previously removed charge.[4]

The closest case Plaintiff has been able to find is *Rigby v. FIA Card Servs., N.A.*, 490 F. App'x 230, 237 (11th Cir. 2012). In *Rigby*, the

---

[4] In fact, the holding in *Humphrey* is not at all applicable here due to the nature of the dispute. Because the reasonable investigation required for unauthorized usage is found in 12 C.F.R. § 1026.12, instead of § 1026.13, Defendant has two separate investigation duties. The fact that Defendant should have already conducted one reasonable investigation pursuant to § 1026.12 does not excuse it from conducting a separate § 1026.13 reasonable investigation. Specifically, the clear text of § 1026.13(h) states that "[a] creditor that has fully complied with the requirements of *this section* has no further responsibilities under *this section* (other than as provided in paragraph (g)(4) of this section) if a consumer reasserts substantially the same billing error." (emphasis added). Thus, because the duty to investigate unauthorized usage arises in a different section of the regulations, Defendant still must comply with the separate reasonable investigation required by § 1026.13.

creditor issued a statement to the consumer, who sent a notice of billing error four weeks later. The charge was removed, but later reasserted. After the charge was reasserted, the consumer sent a second notice of billing error. The district dismissed the consumer's claims, holding that there was no billing error, and that therefore there was not a viable FCBA claim. The 11th Circuit reversed, and held that a proper billing error had been asserted. And, notably, the court stated that "**[q]uestions of fact** relating to the August 3, 2010, letter, such as whether it should be viewed as a new 'billing error' claim as opposed to a continuation of the original claim, need not be decided at this stage." *Id.* at 236 n.4 (emphasis added). Thus, as a question of fact, the matter should not be decided through a motion to dismiss.

Policy reasons also justify starting the 60-day clock at the issuance of the September statement. Plaintiff is certainly not the first consumer to have called a card issuer regarding a billing issue. While, as discussed *supra*, oral notice was sufficient for the precise billing error at issue in *this* case, for many other types of billing errors written notice *is* required. Furthermore, after receiving notice of a billing error, a creditor must complete its investigation within the shorter of two

complete billing cycles or 90 days. 12 C.F.R. § 1026.13(c)(2). But, the official interpretation of this regulation makes it clear that in almost all circumstances, a creditor will have more than two billing cycles, because "if a creditor on a monthly billing cycle receives a billing error notice mid-cycle, it has the remainder of that cycle plus the next two full billing cycles to resolve the error." First Official Interpretation to 12 C.F.R. § 1026.13(c)(2), *available at* http://goo.gl/ONTngh, last visited July 1, 2016. And, because the consumer may not dispute in writing until the issuance of the incorrect statement, his dispute will *never* be received by the credit issuer until the next billing cycle has already begun.

Take, for example, a situation where a billing period ends on the last day of the month. The credit card issuer will presumably mail the relevant statement on or shortly after the first of the following month—in our example June 1. Even if the statement is received by the consumer on June 2; and even if the consumer immediately reviews the statement, prepares a notice of billing error, and delivers the notice of billing error the same day; the notice of billing error cannot be *received* by the credit issuer until after the start of the next billing cycle—i.e.

after June 1. And, pursuant to 12 C.F.R. § 1026.13(c)(2), the credit issuer's investigation can span the rest of that current billing cycle, and then the following 2 billing cycles. Thus, in this hypothetical, the investigation does not have to be completed until September 1, which is well *after* the 60-day time limitation to send a written notice of billing error has expired.

This timing problem is inapplicable if the initial contact with the credit issuer is through a written notice of billing error. But, in a situation like the present case, where the initial contact was done by phone, the credit issuer could immediately credit the charge—as was done here—and then take more than 60-days to conduct an "investigation." And, 60-days after the offending statement had been mailed, the creditor could then reassert the charge. Then, if the consumer submits a written notice of the billing error, the creditor could refuse to conduct a reasonable investigation because it did not receive a written notice of error within 60-days from the issuance of the first statement.

But, why would there be a written notice of error in the above scenario? The creditor had already removed the only item in dispute,

and it would make no sense for a consumer to send a written dispute over an item that was already removed from his bill. As a result, adopting Defendant's proposed reading of the statute would permit a creditor to "trick" a consumer into thinking that a disputed charge was resolved, and then reasserting the charge once the dispute period had passed.[5] Such an interpretation clearly is inconsistent with Third Circuit precedent, which states that "[b]ecause the TILA is a remedial consumer protection statute, we have held it 'should be construed liberally in favor of the consumer.'" *Rossman v. Fleet Bank (R.I.) Nat.*

---

[5] In fact, there is reason to believe that it is a common practice within the credit card industry to immediately honor a consumer's dispute, subject to later resubmission of the charge from the merchant. Note the similarity between the facts alleged here with those alleged in *Humphrey*. "After an investigation, Capital One sent plaintiffs a letter . . ., informing them the account had been credited . . . and stating, '[u]nless the merchant resubmits the charge . . . we consider your case closed. If this occurs, we'll notify you and will re-bill your account for the amount of the credit.'" *Humphrey v. U.S. Bank, N.A.*, 2012 WL 3686272, at *5 (N.D. Okla. Aug. 24, 2012). Similarly, here, Bank of America sent Plaintiff a letter informing him that the acount had been credited and stating that "although . . . . [Bank of America considers] the dispute(s) resolved, the merchant does have the opportunity . . . to support why they feel the transaction(s) is valid." Thus, it is possible that the credit card issuers are already employing the delay tactic described above.

*Ass'n*, 280 F.3d 384, 390 (3d Cir. 2002)(quoting *Ramadan v. Chase Manhattan Corp.,* 156 F.3d 499, 502 (3d Cir.1998)).

In the present case, ultimately, whether the 60-day period began from the transmission of the July statement or the September statement should not matter. As discussed above, this 60-day time period, and the requirement that notice be provided in writing, does not apply when a consumer asserts unauthorized usage. Thus, it is actually immaterial if the Court finds that Plaintiff's 60-day clock began upon receipt of the July 18, 2015 statement, because the July 29, 2015 oral notification was sufficient to alert Defendant of the unauthorized usage billing error. And, as a result, Defendant was certainly under an obligation to conduct a reasonable investigation. However, for the reasons discussed above, the Court should hold that the relevant date for determining if a notice of written error is timely should be the date that the statement containing the reasserted charge was transmitted to the consumer.

3. *Defendant did not conduct a reasonable investigation.*

Irrespective of whether the notice of billing error satisfied the procedural requirements for the FCBA, Defendant was required to

conduct a reasonable investigation after Plaintiff alerted it of the

unauthorized usage.[6] Here, any investigation that Defendant conducted

was not "reasonable."[7]

Although Regulation Z does not define what constitutes a

reasonable investigation, the official interpretations to 12 C.F.R.

§ 1026.12(b) do provide eight examples of steps that a card issuer may

take, as appropriate, in conducting a reasonable investigation:

    i.   Reviewing the types or amounts of purchases made in relation to the cardholder's previous purchasing pattern.
   ii.   Reviewing where the purchases were delivered in relation to the cardholder's residence or place of business.
  iii.   Reviewing where the purchases were made in relation to where the cardholder resides or has normally shopped.

---

[6] As discussed *supra*, Defendant had to conduct a reasonable investigation under either the FCBA or the unauthorized usage provisions of TILA and Regulation Z. And, both provisions are enforced through 15 U.S.C. § 1640. Thus, it is immaterial if the investigation had to be conducted for unauthorized usage or under the FCBA.

[7] Plaintiff does not argue that liability is tied to the ultimate *result* of an investigation. However, just because Defendant is not required to be perfect does not mean that it can abdicate its responsibility to conduct some minimally meaningful investigation. Plaintiff's complaint is not that Defendant was wrong in its investigation results—instead, his complaint is that Defendant's "investigation" was ridiculous, and certainly did not satisfy its obligation to conduct a *reasonable* investigation.

iv.  Comparing any signature on credit slips for the
         purchases to the signature of the cardholder or an
         authorized user in the card issuer's records,
         including other credit slips.
    v.   Requesting documentation to assist in the
         verification of the claim.
    vi.  Requiring a written, signed statement from
         the cardholder or authorized user. For example,
         the creditor may include a signature line on a
         billing rights form that the cardholder may send in
         to provide notice of the claim. However,
         a creditor may not require the cardholder to
         provide an affidavit or signed statement under
         penalty of perjury as part of a reasonable
         investigation.
    vii. Requesting a copy of a police report, if one was
         filed.
   viii. Requesting information regarding
         the cardholder's knowledge of the person who
         allegedly used the card or of that person's
         authority to do so.

Third Official Interpretation to § 1026.12(b), *available at*

http://goo.gl/Wcs2RD, last visited June 29, 2016.

Plaintiff, of course, does not contend that Defendant is required to

perform each of these eight steps every time there is an allegation of

unauthorized usage. However, these steps indicate that Defendant

must actually conduct its own investigation, and that it cannot simply "parrot" whatever information is provided to it by the merchant.[8]

Here, Defendant *did* simply rely on information provided to it by the merchant. In its September 11, 2015 letter, Defendant provided the results from its investigation, and it stated:

```
The merchant provided a copy of the sales slip(s) as verification of
the charge(s). After reviewing the documentation, we found that we're
unable to resolve the dispute(s) directly with the merchant(s) for the
following reason(s):

- The information provided by the merchant matches the home address,
phone number, or email address we have listed on your account.

As a result, we consider the transaction(s) valid. If we previously
issued credit(s) to your account, the charge(s) will be rebilled and
will appear on your monthly statement. At this time, we consider your
dispute(s) resolved and the balance is owed in accordance with your
Credit Card Agreement.
```

(Doc. 8-5.) Thus, based on Defendant's own letter, it appears that its investigation consisted solely of reviewing information provided by the merchant to confirm that the home address, phone number, *__or__* email

---

[8] The phrase "parroting" is often used in litigation under the Fair Credit Reporting Act, which imposes an obligation on a consumer reporting agency to conduct a reasonable investigation. As the Third Circuit has held, a reasonable investigation "must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

address matched the information on Plaintiff's account. Of course, none of these three pieces of information are items that are closely guarded by consumers. Rather, numerous addresses and phone numbers are *publicly available* in phone books, and email addresses are likewise designed to be exchanged with other individuals to engage in communications. Determining that a transaction was authorized merely because a creditor can provide one of these three pieces of "business-card-information" is anything but a *reasonable* investigation.

Furthermore, a review of the documents that Western Union provided to Defendant illuminates how unreasonable the investigation actually was. The second example of the steps that could be performed as part of a reasonable investigation, listed *supra*, is "[r]eviewing where the purchases were delivered in relation to the cardholder's residence or place of business." Here, the documents Western Union provided to Defendant indicate that the money order was paid to an individual named Amit Rajak in Mumbai, India. (Doc. 8-9.) However, Plaintiff has never been to India, and he does not know anyone named Amit Rajak. (Doc. 8 ¶ 41.) Even a cursory review of the Western Union response should have led a person conducting a reasonable investigation to, at

least, contact Plaintiff to determine if he had sent funds to India, or if he even knew anyone in India.

Defendant seems to suggest that simply performing *any* investigation is all that the statute requires. In support of this argument, Defendant cites to *Humphrey v. U.S. Bank, N.A.*, 2012 WL 3686272 (N.D. Okla. Aug. 24, 2012). In *Humphrey*, the court held that the statutory requirement had been satisfied simply because the card issuer

> sent plaintiffs a letter dated March 22, 2010, informing them the account had been credited in the amount of $415.00, and stating, '[u]nless the merchant resubmits the charge within 45 days of the date of this letter, we consider your case closed. If this occurs, we'll notify you and will re-bill your account for the amount of the credit.' Thus, the investigation was completed within two billing cycles and was reasonable, as required by the statute and regulation.

*Id.* at *5 (internal citations to the record omitted). However, there is no analysis on whether this investigation constituted a "reasonable investigation." Instead, the court simply states in a conclusory matter that the investigation requirement had been satisfied.

*Rigby v. FIA Card Servs., N.A.*, 490 F. App'x 230, 236 (11th Cir. 2012), on the other hand, discusses the requirement that an

27

investigation must be reasonable. In *Rigby*, the issue was not

unauthorized usage, but was instead a merchant's failure to deliver

goods. In reversing the dismissal of the consumer's claims, the court

stated that:

> Rigby does not dispute that BOA conducted an investigation of his claim, and resolved his claim within the statutory deadline. **Instead, Rigby disputes the adequacy of that investigation.** Specifically, Rigby alleges that he provided BOA with the August 3, 2010, letter, in which [a vacation club] acknowledged that it would be "impossible" for Rigby to use the membership. That fact renders plausible the claim that BOA failed to follow-up when presented with information that could have conclusively demonstrated non-delivery. **Or, alternatively, the letter allows the reasonable inference that BOA's initial investigation, which led it to reinstate the charge on July 21, 2010, was inadequate.** As a result, Rigby has pleaded facts that, taken as true, allow the reasonable inference that BOA's investigation was not "reasonable" and that BOA's disposition of the billing error claim did not rest on a determination that the club membership was "actually delivered."

*Id.* at 236-37. (emphasis added).

*Rigby* is directly on point. Plaintiff does not claim that Defendant

failed to conduct *any* investigation. Rather, he disputes the

reasonableness of the investigation. And, in his complaint, he has

alleged that the investigation was unreasonable because it was based

solely on confirming that the unauthorized user of his card had

provided the merchant with Plaintiff's address, telephone number _or_

email address.

Furthermore, whether an investigation is reasonable is a question

of fact that cannot be resolved on a motion to dismiss. *See generally*

*Cushman v. Trans Union Corp.*, 115 F.3d 220, 226 (3d Cir.

1997)(reversing judgment as a matter of law in an Fair Credit

Reporting Act case when the jury could have concluded that the

investigation was not reasonable); *Davis v. Trans Union, LLC*, 526 F.

Supp. 2d 577, 585 (W.D.N.C. 2007)("Whether a furnisher of information

[in a Fair Credit Reporting Act case] conducted a reasonable

investigation is a question of fact left to the jury.")(citing *Bruce v. First*

*U.S.A. Bank, N.A.*, 103 F.Supp.2d 1135,1143 (E.D.Mo.2000)(citing

*Cushman*)); *Roundtree v. Chase Bank USA, N.A.*, 2014 WL 794800, at

*6 (W.D. Wash. Feb. 27, 2014)("Generally, deciding whether an

investigation was reasonable [in an FCBA case] is not appropriate on

summary judgment, but summary judgment is not precluded when the

jury could come to one conclusion about the investigation's reasonableness.").

Thus, Defendant's motion to dismiss must be denied because Plaintiff has properly alleged that Defendant's investigation was not reasonable, and it would be premature to resolve this question of fact through a motion to dismiss.

4. *Plaintiff <u>does</u> have a private right of action for violations of the unauthorized usage requirements in TILA.*

Defendant also argues that Plaintiff cannot sustain a cause of action under TILA's unauthorized usage section—15 U.S.C. § 1643. However, this argument ignores the clear language of the statute. The relevant private right of action for TILA violations can be found in 15 U.S.C. § 1640. This section provides that "any creditor who fails to comply with any requirement imposed under this part . . . with respect to any person is liable to such person . . . ." 15 U.S.C. § 1640(a). Like the private right of action, 15 U.S.C. § 1643 is in Part B of Chapter 41 of Title 15 of the U.S. Code. Thus, based on the clear language of the

statute, Plaintiff has a private right of action to enforce the violation of the unauthorized usage section and recover the relief listed in § 1640.[9]

Defendant's brief does not address whether § 1640 provides a private right of action for violations of the unauthorized usage section. Instead, its brief is focused solely on whether a cardholder is authorized to sue a card issuer for reimbursement of payments made on fraudulent purchases. Plaintiff acknowledges the Third Circuit's holding in *Azur v. Chase Bank, USA, Nat. Ass'n*, 601 F.3d 212, 217 (3d Cir. 2010), where the court held that a right to reimbursement does not exist. However, a review of the facts in *Azur* demonstrates the obvious distinction between that case and the present matter.

In *Azur*, the consumer's personal assistant misappropriated over $1 million through the fraudulent use of a credit card over the course of seven years. *Id.* at 213. The consumer did not review his monthly statements, and the personal assistant paid the bills by writing checks

---

[9] This section provides that a consumer may recover statutory damages, attorney's fees, and actual damages. As discussed below, Defendant's argument only involves Plaintiff's right to recover actual damages in the form of recoupment of payments made on disputed amounts. Defendant does not address the claim for statutory damages and attorney's fees available under this section.

from the consumer's bank account. *Id.* at 214. Multiple times, the transactions were brought to the attention of the bank's fraud department, which left messages for the consumer. Some of the calls went unanswered, and other times a female, which may have been the personal assistant, called to verify the account information. *Id.* at 215. The consumer thereafter discovered a letter requesting a transfer of funds from his checking account. After he investigated, he terminated the personal assistant's employment and notified the bank of the fraudulent use of his card. He thereafter filed a lawsuit, demanding damages under TILA.

The Third Circuit held that there was no right to reimbursement under § 1643. However, in *Azur* the claim was for funds that were voluntarily paid *prior* to notice of the unauthorized usage being given to the bank. Thus, the practical effect of the holding in *Azur* was twofold: (1) the bank was not required to return the funds that the consumer had voluntarily paid during the time when he was not reviewing his bank and credit card statements, and (2) the bank was not required to *retroactively* limit the liability of the cardholder for unauthorized use. Furthermore, the *Azur* court ultimately held that the personal assistant

had apparent authority to use the credit card at issue, which means that the usage was not "unauthorized." Therefore, § 1643's liability limitation never applied. As a result, the court's holding that there is no right of reimbursement is dicta, as it was not relevant to the ultimate holding that the usage was authorized.[10]

The facts in *Azur* are obviously at odds with the facts in the present case. Here the bank was notified the same day of fraudulent activity, and the charge was originally credited back to the account

---

[10] The *Azur* court relied on *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162 (3d Cir. 2008) when it held that there was no right to reimbursement. However, the situation in *Sovereign Bank* is entirely different than the present matter. *Sovereign Bank* did not involve a dispute by a consumer. Instead, the appellant was the credit card issuer and the appellees were various merchants. The credit card issuer had previously paid funds to the merchants that exceeded the non-party cardholder's liability under § 1643. In other words, if there was a $750.00 fraudulent purchase that was made at the merchant's store as a result of unauthorized usage, the consumer would only be liable for at most $50.00. Thereafter, this specific credit card issuer would pay the remaining $700.00 of the charge to the merchant ("the Additional Funds"). When the card issuer determined that the unauthorized usage arose from the merchant's negligence, the credit card issuer sued the merchants in an attempt to, *inter alia*, recover the Additional Funds it had paid to the merchants under a theory of equitable indemnification. The court rejected this claim, holding that because the credit card issuer was not under an obligation to reimburse the merchant for the Additional Funds, it had no basis for seeking equitable indemnification. Thus, *Sovereign Bank* is not at all relevant to the present matter.

prior to the funds even being released by the merchant to the

unauthorized user. Once provided with notice of the unauthorized

usage, Defendant should have conducted a reasonable investigation.

And, because of the unauthorized usage, Plaintiff's liability should have

been limited to at most $50.00.[11] However, instead of limiting Plaintiff's

_____

[11] It is likely that Plaintiff should have had *no* liability for the
unauthorized charge, as it appears that the purchase was made online
and not through the presentment of the actual card. The official
interpretation to 12 C.F.R. § 1026.12(b)(2)(iii) states that:

> The cardholder may not be held liable under
> § 1026.12(b) when the card itself (or some other
> sufficient means of identification of the
> cardholder) is not presented. Since the issuer has
> not provided a means to identify the user under
> these circumstances, the issuer has not fulfilled
> one of the conditions for imposing liability. For
> example, when merchandise is ordered by
> telephone or the Internet by a person without
> authority to do so, using a credit card account
> number by itself or with other information that
> appears on the card (for example, the card
> expiration date and a 3- or 4-digit cardholder
> identification number), no liability may be
> imposed on the cardholder.

Third Official Interpretation to § 1026.12(b)(2)(iii), *available at*
http://goo.gl/amYDKC, last visited June 29, 2016. However, for
purposes of this motion the *actual* amount of liability is immaterial
because the amount of liability could *never* have been more than $50.00
and Defendant charged substantially *more* than $50.00 to Plaintiff's
account.

liability, Defendant sent him multiple statements which sought payment for the entire $657.00. In other words, Defendant improperly asserted that Plaintiff owed the entire amount of the unauthorized usage. TILA requires Defendant to send monthly statements to a consumer which must include, *inter alia*, "[t]he outstanding balance. . . ." 15 U.S.C. § 1637(b)(8). As a result, here Defendant sent Plaintiff a statement seeking to collect an improper amount, and thereafter collected the amount.

Thus, Plaintiff's actual damage claim is not to recover amounts that were voluntarily paid *prior* to alerting the creditor of the unauthorized usage—which was the case in *Azur*. Instead, he is seeking to recover funds that he never should have been asked to pay, as his liability should have been limited under § 1643.

The result sought by Plaintiff is further supported by Regulation Z. At 12 C.F.R. § 1026.11, the regulation discusses how a creditor should treat a credit balance that arises from, *inter alia*, a consumer transmitting "funds to a creditor in excess of the total balance due on an account . . . ." 12 C.F.R. § 1026.11(a). This section mandates that: (1) any such overpayment must be credited to the consumer's account, (2)

any such overpayment must be refunded to the consumer within seven business days from receipt of a written request from a consumer, and (3) the creditor make a good-faith effort to refund the credit if it remains on the consumer's account for more than six months. *Id.* Practically, Plaintiff is seeking the return of the excess amount that he paid to Defendant. And, there can be no doubt that Plaintiff would be entitled to recover this sum if Defendant had properly limited his liability as required by TILA and he had thereafter paid the same amount. Thus, this section of the regulation provides further support for allowing Plaintiff to recover the excess funds he paid to Defendant.

The present situation is entirely different than the *Azur* case. Instead, the Court should look at how Regulation Z requires a creditor to handle an overpayment. And, since Regulation Z would require the creditor to return the excess funds, the Court should permit Plaintiff to seek to recover his excess payments and should follow the cases which have permitted consumers to pursue claims to recover funds which were improperly obtained. *See, e.g, Bromfield v. HSBC Bank Nevada*, 2014 WL 183895, at *3, n.3 (D. Or. Jan. 13, 2014)("The Court finds that a consumer may maintain a cause of action under 15 U.S.C. § 1643,

despite the fact that Section 1643 does not state explicitly that a cardholder can bring a suit claiming a violation of that section.")

5. *Plaintiff has properly asserted a claim for violations of the Fair Credit Extension Uniformity Act and the Unfair Trade Practices and Consumer Protection Law.*

Plaintiff has also alleged that Defendant violated the Fair Credit Extension Uniformity Act ("FCEUA") and the Unfair Trade Practices and Consumer Protection Law ("UTPCPL").[12] This violation occurred when Defendant sought to collect "any amount, including any interest, fee, charge or expense incidental to the principal obligation, unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 73 P.S. § 2270.4(b)(6)(i). Defendant asserts that Plaintiff's claims under these statues fail because Plaintiff has not pled an ascertainable loss or justifiable reliance. However, as discussed below, Defendant's arguments fail.

    i.   <u>Ascertainable Loss</u>

Defendant's argument that Plaintiff has not suffered an ascertainable loss must fail. In his complaint, Plaintiff described how

---

[12] A violation of the FCEUA is a per se violation of the UPTCPL. 73 P.S. § 2270.5(a).

Defendant sought to collect the entire $657.00 charge after he notified Defendant of the unauthorized usage. However, as discussed *supra*, Plaintiff's liability was limited to at most $50.00 for this unauthorized usage. Thus, by demanding payment for the entire amount of the charge, Defendant sought to collect at least $607.00 more than it was entitled to collect. And, because Plaintiff paid this unnecessary amount, he has suffered an ascertainable loss as a result of Defendant's violation of the FCEUA.

Defendant states that Plaintiff's ascertainable loss argument must fail because he has not affirmatively alleged that he paid this amount. In support of its argument, Defendant cites to *Benner v. Bank of Am., N.A.*, 917 F. Supp. 2d 338, 360 (E.D. Pa. 2013) However, in *Benner*, the plaintiff had pled that he did not pay the fee at issue. *Id.* at 360 ("According to the Amended Complaint, Plaintiff has not paid the $262.50 fee."). Thus, based on this allegation, the court was able to hold that "[w]ithout actually paying for the allegedly improper inspection fees, Plaintiff's FCEUA claim, as brought under the UTPCPL, in Count III of the Amended Complaint fails because of his inability to show an 'ascertainable loss of money or property' required by the statute." *Id.*

Here, Plaintiff did *not* include an allegation that he did not pay his credit card bill. And, in a motion to dismiss, "a court must resolve all reasonable inferences in the non-moving party's favor." *Brown v. Card Service Center*, 464 F.3d 450, 452 (3rd Cir. 2006). Thus, for purposes of this motion, the Court should infer that Plaintiff did pay the entire amount of the unauthorized usage.[13] As a result, it is clear *Benner* is inapplicable to the present matter, and Plaintiff has satisfied the ascertainable loss element.

    ii.   <u>Justifiable Reliance</u>

Defendant also claims that Plaintiff needs to demonstrate justifiable reliance in order to succeed on his FCEUA/UTPCPL claim. However, Defendant's argument conflates reliance, which is normally an element necessary to *establish* a violation of the UTPCPL,[14] with

---

[13] If the Court rejects Plaintiff's claim because he did not affirmatively allege that he paid the amount of the unauthorized usage, Plaintiff respectfully requests that the Court grant him leave to amend his complaint to affirmatively allege that he made this payment.

[14] As discussed in footnote 12, a violation of the FCEUA is a *per se* violation of the UTPCPL. Thus, if Plaintiff is able to establish that Defendant violated the FCEUA, he does not need to also establish that Defendant violated the UTPCPL. Instead, he just needs to show that he satisfies the requirements to utilize the UTPCPL's private right of action—namely an ascertainable loss caused by Defendant's conduct.

causation of loss, which is a prerequisite to utilizing the UTPCPL's private right of action. And, as Plaintiff's ascertainable loss was caused by Defendant demanding the entire amount of the debt, Plaintiff has adequately pled causation. But, this distinction does not even matter, as Plaintiff has satisfactorily pled justifiable reliance.

As discussed *supra*, Defendant is required to mail monthly statements to Plaintiff. These statements are required to include "[t]he outstanding balance in the account at the end of the period." 15 U.S.C. § 1637(b)(8). Obviously, the outstanding balance only includes the amounts actually due. *See generally* 12 C.F.R. § 1026.11(a)(mandating how a card issuer must treat a credit balance if, *inter alia*, the consumer transmits "funds in excess of the total **balance due** . . . ."). Thus, a card issuer has a duty to correctly include the amount owed by the consumer on a statement. Here, Defendant violated this duty when it sought to collect the entire amount of the unauthorized usage from Plaintiff. And, Plaintiff justifiably and reasonably relied on the statement issued by Defendant when he paid his credit card bill. Thus, because Defendant had an obligation to furnish accurate bills, there can be no doubt that Plaintiff's reliance on these statements was therefore "justifiable."

Furthermore, Plaintiff's reliance is also justified when the October

9, 2015 letter is taken into consideration, where Defendant stated that:

```
we consider your dispute(s) resolved and the balance is owed in
accordance with your Credit Card Agreement. Please continue to make
the required payments on the remaining balance, if any, in order to
avoid any related charges.
```

(Doc. 8-9.) It certainly would be reasonable for Plaintiff to rely on

Defendant's statements, and pay the amounts his creditor claimed were

due, when he was threatened with being assessed "related charges" if

he failed to make the demanded payment. Thus, Plaintiff has

adequately pled his FCEUA/UTPCPL claim even if the Court does

analyze whether his reliance was justified.

6. *Defendant's alternative motion to strike should also be denied, as pattern or practice is relevant to the award of statutory damages.*

Defendant also argues that the Court should strike Plaintiff's

allegations regarding pattern or practice, because Defendant claims

that "these pattern or practice allegations have no relevance to the

elements of a [sic] FCBA claim . . . ." (Doc. 11 p. 19.) However,

Defendant's position is clearly incorrect. Plaintiff is seeking damages

under 15 U.S.C. § 1640. And, § 1640(a)(2)(A)(iii) clearly states that a

plaintiff may recover "in the case of an individual action relating to an

open end consumer credit plan that is not secured by real property or a

dwelling, twice the amount of any finance charge in connection with the transaction, with a minimum of $500 and a maximum of $5,000, or such higher amount *as may be appropriate in the case of an established pattern or practice of such failures . . . .*" (emphasis added).

Thus, because a pattern or practice is clearly an element in determining the amount of the statutory damage award, Defendant's alternative motion to strike should also be denied.

## CONCLUSION

There can be no doubt that Defendant was required to conduct a reasonable investigation—either because Plaintiff submitted a timely notice of error in writing, which triggered its obligations under the FCBA, or because Plaintiff provided oral notice of unauthorized usage. The question of whether the investigation was reasonable should be left to the jury.

Furthermore, this case is readily distinguishable from the *Azur* decision, and Plaintiff is permitted to recover the amount that Defendant collected in excess of the limitation for unauthorized usage. Plaintiff has also adequately alleged all of the necessary elements for his claims under the FCEUA and the UTPCPL. Finally, Defendant's

motion to strike must fail, as pattern or practice is clearly an element that should be taken into consideration when determining the statutory damage award under 15 U.S.C. § 1640.

Thus, for the foregoing reasons, Defendant's motion to dismiss should be denied.

s/ Brett Freeman
Brett Freeman

## CERTIFICATE OF SERVICE

Service is being effectuated via the CM/ECF system.

s/ Brett Freeman
Brett Freeman

## WORD COUNT CERTIFICATION

The foregoing documents contains 9,192 words. I have relied on the word-count feature of the word-processing program used to prepare the brief.

s/ Brett Freeman
Brett Freeman