**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILLIAM KRIEGER, | : | Case No. 4:16-CV-00830 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| BANK OF AMERICA, N.A., | : | |
| | : | |
| Defendant. | : | |

**<u>MEMORANDUM</u>**

January 17, 2017

Before the Court for disposition is Defendant Bank of America, N.A.'s

Motion to Dismiss Plaintiff's Amended Complaint.  For the following reasons,

Defendant's Motion will be granted.

## I.    FACTUAL BACKGROUND[1]

This action was brought before the Court by Notice of Removal on May 9,

2016.[2]  At its core, Plaintiff William Krieger's ("Plaintiff") Amended Complaint

concerns Defendant Bank of America, N.A.'s ("Defendant") actions in light of

what he contends was a fraudulent transaction billed to his account.  In support of

---

[1]  For purposes of this Motion to Dismiss, the allegations presented in Plaintiff's Amended Complaint will be taken as true, and all inferences will be construed in the light most favorable to Plaintiff.

[2]  ECF No. 1.

this contention, Plaintiff's Amended Complaint contains the following factual

narrative.

The instant dispute stems from functional problems which Plaintiff[3] was

experiencing with his computer in June 2015.  Specifically, on or about June 27,

2015, Plaintiff received a telephone call from an unknown third party identifying

himself as a Microsoft employee.[4]  This unknown party informed Plaintiff that his

computer woes were the result of a virus, and requested that Plaintiff grant him

remote access to remedy the situation.[5]  As this unknown party was accessing the

computer to "remove the virus," Plaintiff's daughter arrived home and informed

him that this call was likely the result of a scam.[6]  To remedy the situation, she

then disconnected the computer from the internet.[7]  Plaintiff asserts that, as his

daughter pulled the plug, his credit card number displayed on the computer screen.[8]

---

[3] Plaintiff was, at all times relevant to this action, a holder of a BankAmericard Visa account with Defendant. Am. Compl. (ECF No. 8) ¶ 10, at 2.  He avers that he used said account for personal, family, and household purposes and that Defendant regularly extended open-end credit upon which it later assessed finance charges. Id. ¶¶ 10–11, at 2–3.

[4] Am. Compl. (ECF No. 8) ¶ 13, at 3.

[5] Id. ¶ 14.

[6] Id. ¶¶ 15–16.

[7] Id. ¶ 17, at 3.

[8] Id.

To mitigate the potential effects of this scam, Plaintiff and his daughter made two telephone calls.  First, they called Microsoft and were informed that the individual accessing their computer was not a Microsoft employee.[9]  Second, Plaintiff called Defendant to inquire about possible unauthorized charges made by this unknown third party.[10]  During this latter conversation, Plaintiff was told that a Western Union money transfer had been purchased in the amount of $657.00.[11]  Although Plaintiff then relayed that he had not authorized the charge and that his account was compromised, Defendant's customer service department instructed Plaintiff that action concerning the charge could be taken only after he received a billing statement.[12]

On July 29, 2015, Plaintiff received a billing statement from Defendant which reflected the Western Union charge from June 27, 2015.[13]  During a subsequent telephone call made to Defendant, Plaintiff again expressed that the charge was unauthorized.[14]  Defendant initially expressed that it could not do

---

[9]  Am. Compl. ¶ 18.

[10]  Id. ¶ 19, at 4.

[11]  Id. ¶ 20.

[12]  Id. ¶¶ 21-24, at 4.  During this call, Defendant also cancelled the account number associated with the charge and issued a new credit card. Id. ¶ 25.

[13]  Id. ¶¶ 26–27.

[14]  Am. Compl. ¶ 28, at 5.

anything concerning the charge because Western Union had already authorized the charge.[15]  However, Defendant later advised Plaintiff during a second telephone call that it would credit the account while it investigated the charge.[16]  Two letters later received by Plaintiff, and attached to his Amended Complaint, memorialized the substance of these telephone conversations.[17]  Based on both these letters and a billing statement received after August 18, 2015, Plaintiff believed the disputed charge had been resolved to his satisfaction.[18]

Defendant then mailed a letter on September 11, 2015 which indicated that it had completed its investigation of the disputed charge, and, because Western Union had documentation supporting the validity of the charge, it would be reinstating the disputed amount.[19]  Defendant also enclosed a document entitled "Western Union Chargeback Response" which listed the recipient of the money order as Amit Rajak in Mumbai, India.[20]  Plaintiff avers that he has never been to

---

[15]  Id. ¶ 29.

[16]  Id. ¶ 31.

[17]  Id. ¶¶ 32–33, at 5–6.  See also Letters Confirming July 29, 2015 Phone Call (ECF No. 8-3).

[18]  Id. ¶¶ 34–37, at 6.

[19]  Am. Compl. ¶¶ 38–39, at 6–7.  See also September 11, 2015 Letter from Defendant (ECF No. 8-5).

[20]  Id. ¶ 40, at 7.

India, nor does he know any named Amit Rajak.[21]  A billing statement for August

19, 2015 through September 18, 2015 subsequently confirmed the reinstatement of

this charge.[22]

On September 23, 2015, Plaintiff again contacted Defendant to discuss this

now-rebilled Western Union charge.[23]  During this telephone call, Defendant's

representatives stated that the Western Union money transfer had not been paid out

until August 1, 2015—following what Plaintiff avers were numerous warnings to

Defendant that the charge was unauthorized.[24]  A Notice of Billing Error was

thereafter sent by Plaintiff on September 26, 2015 and received by Defendant on

September 29, 2015.[25]  An acknowledgement sent by Defendant on October 3,

2015 confirmed its receipt.[26]  Defendant further responded in a letter dated October

9, 2015 that it was unable to credit Plaintiff's account based on the results of its

investigation of the charge.[27]

---

[21]  Id. ¶ 41.

[22]  Id. ¶¶ 42–43, at 7.

[23]  Id. ¶ 44, at 8.

[24]  Am. Compl. ¶¶ 45–46.

[25]  Id. ¶¶ 48–50.  See also Notice of Billing Error and Corresponding Mail Receipts (ECF No. 8-7).

[26]  Id. ¶ 51.  See also Defendants Acknowledgment of Receipt of Billing Error Notice (ECF No. 8-8).

[27]  Id. ¶¶ 52–53, at 8–9.

Based on these events, Plaintiff asserts that Defendant violated (1) the Fair Credit Billing Act ("FCBA"),[28] (2) the Truth in Lending Act ("TILA"),[29] and (3) the Fair Credit Extension Uniformity Act ("FCEUA")[30] and Unfair Trade Practices and Consumer Protection Law ("UTPCPL").[31] Defendant, in turn, has moved to dismiss the entirety of Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).[32] This matter has since been fully briefed and is ripe for disposition.[33]

## II.   DISCUSSION
### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." Such a motion "tests the legal sufficiency of a pleading" and "streamlines litigation by dispensing with needless discovery and factfinding."[34] "Rule 12(b)(6)

---

[28] 15 U.S.C. § 1666.

[29] 15 U.S.C. § 1601 *et seq.*

[30] 73 P.S. § 2270.1 *et seq.*

[31] 73 P.S. § 201-1 *et seq.*

[32] ECF No. 10.

[33] ECF Nos. 11, 16, & 17.

[34] In re Hydrogen Peroxide Litigation, 552 F.3d 305, 316 n.15 (3d Cir. 2008) (Scirica, C.J.) (quoting Szabo v. Bridgeport Machines, Inc., 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)). Neitzke v. Williams, 490 U.S. 319, 326–27 (1989).

authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[35] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[36]

Beginning in 2007, the Supreme Court of the United States initiated what some scholars have termed the Roberts Court's "civil procedure revival" by significantly tightening the standard that district courts must apply to 12(b)(6) motions.[37]  In two landmark decisions, <u>Bell Atlantic Corporation v. Twombly</u> and <u>Ashcroft v. Iqbal</u>, the Roberts Court "changed . . . the pleading landscape" by "signal[ing] to lower-court judges that the stricter approach some had been taking was appropriate under the Federal Rules."[38]  More specifically, the Court in these two decisions "retired" the lenient "no-set-of-facts test" set forth in <u>Conley v. Gibson</u> and replaced it with a more exacting "plausibility" standard.[39]

Accordingly, after <u>Twombly</u> and <u>Iqbal</u>, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

---

[35]  <u>Neitzke</u>, 490 U.S. at 326 (citing <u>Hishon v. King & Spalding</u>, 467 U. S. 69, 73 (1984)).

[36]  <u>Neitzke</u>, 490 U.S. at 327.

[37]  Howard M. Wasserman, <u>The Roberts Court and the Civil Procedure Revival</u>, 31 Rev. Litig. 313 (2012).

[38]  550 U.S. 544 (2007); 556 U.S. 662, 678 (2009). Wasserman, <u>supra</u> at 319–20.

[39]  <u>Iqbal</u>, 556 U.S. at 670 (citing <u>Conley v. Gibson</u>, 355 U.S. 41 (1957)) ("[a]cknowledging that <u>Twombly</u> retired the <u>Conley</u> no-set-of-facts test").

to relief that is plausible on its face.'"[40]  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."[41]  "Although the

plausibility standard does not impose a probability requirement, it does require a

pleading to show more than a sheer possibility that a defendant has acted

unlawfully."[42]  Moreover, "[a]sking for plausible grounds . . . calls for enough facts

to raise a reasonable expectation that discovery will reveal evidence of

[wrongdoing]."[43]

    The plausibility determination is "a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense."[44]  No

matter the context, however, "[w]here a complaint pleads facts that are 'merely

consistent with' a defendant's liability, it 'stops short of the line between

possibility and plausibility of entitlement to relief.'"[45]

    When disposing of a motion to dismiss, a court must "accept as true all

---

[40]  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

[41]  Iqbal, 556 U.S. at 678.

[42]  Connelly v. Lane Const. Corp., 809 F.3d 780, 786 (3d Cir. 2016) (Jordan, J.) (internal
    quotations and citations omitted).

[43]  Twombly, 550 U.S. at 556.

[44]  Iqbal, 556 U.S. at 679.

[45]  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557 (internal quotations omitted)).

factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."[46]  However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[47]  "After Iqbal, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss."[48]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[49]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by Twombly and Iqbal, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[50]

---

[46]  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[47]  Iqbal, 556 U.S. at 678 (internal citations omitted).

[48]  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.).

[49]  Iqbal, 556 U.S. at 678.

[50]  Connelly, 809 F.3d at 787 (internal quotations and citations omitted).

**B. Analysis**

Through the instant Motion to Dismiss, Defendant now asks this Court to dismiss Plaintiff's Amended Complaint in its entirety.  Having considered the arguments of both parties, I will grant this Motion.   My reasoning for this conclusion follows below and is separated in accordance with the claim analyzed.

**(1)      Plaintiff Has Not Alleged a Plausible Claim For Relief Under the Fair Credit Billing Act.**

The Fair Credit Billing Act "provides a procedure through which a debtor can dispute statements containing a billing error issued by a creditor."[51] Specifically, when a creditor receives written notice from the consumer of the alleged errors within 60 days of the issuance of the statement containing those charges, the FCBA requires creditors to investigate and correct any charges erroneously billed to a consumer's account.[52]  To trigger such an investigation, the written notice of billing error must contain: "(1) information that allows the creditor to ascertain the consumer's name and account number, (2) an indication that the consumer believes the statement contains a billing error and the amount of that error, and (3) the reasons for the consumer's belief."[53]

---

[51]  Pinner v. Schmidt, 805 F.2d 1258, 1264 (5th Cir. 1986).

[52]  15 U.S.C. § 1666(a); see also Burrell v. DFS Servs., LLC, 753 F.Supp.2d 438, 451 (D.N.J. 2010).

[53]  Burrell, 753 F.Supp.2d at 451 (citing 15 U.S.C. § 1666(a)).

In the matter at hand, Defendant alleges that its obligations under the FCBA were not triggered because Plaintiff failed to send a written notice of billing error within 60 days after receiving the first billing statement containing the Western Union charge.[54]  I agree with this contention.  According to the facts as plead by Plaintiff, the first statement containing the Western Union charge was received on July 29, 2015.[55]  Plaintiff, however, first contested this charge by **written** notice received by Defendant on September 29, 2015.[56]  The duration between July 28, 2015 (the absolute earliest date on which first statement containing the Western Union charge could have been issued) and September 29, 2015 (the date which Plaintiff alleges Defendant received his written notice) is <u>**63**</u> days.[57]  Because this passage of time exceeds 60 days, Defendant's obligations under Section 166(a)(A) and (B) were never triggered.  Liability under this statute can therefore not be imposed.

In light of this clear deficiency, Plaintiff valiantly attempts to rescue his claim by making creative, but ultimately unpersuasive arguments concerning the

---

[54]  Def.'s Br. in Supp. of its Mot. to Dismiss (ECF No. 11) at 8–10.

[55]  Am. Compl. ¶ 26, at 4.

[56]  <u>Id.</u> ¶ 50, at 8.

[57]  This duration of 63 days is the lowest possible duration between issuance of the billing statement by Defendant and the receipt by Defendant of Plaintiff's written notice of billing error. In all likelihood, the actual duration exceeded 63 days as the billing statement was likely issued and mailed before July 28, 2015.

written notice requirement.  First, Plaintiff argues that, although 12 C.F.R. §

1026.13(b) of Regulation Z governs this dispute under the FCBA, the Consumer

Financial Protection Bureau's official interpretations of this section require a cross

reference with 12 C.F.R. § 1026.12.  Therefore, because Section 1026.12 provides

that notification may be made "by telephone, or in writing,"[58] Plaintiff provided the

required notice by informing Defendant of the Western Union charge by telephone

on July 29, 2015.  This argument is incorrect.  As noted by Defendant, Section

1026.12(b)(3) concerns the liability of a **cardholder** for unauthorized charges.

Here, the instant action as plead by Plaintiff concerns **card issuer** Defendant's

liability under Section 1666(a) of the FCBA for failure to conduct a reasonable

investigation.  As I previously recognized in Knowles v. Capital One Bank (USA),

N.A., this card issuer obligation is only triggered upon written notice of billing

error.[59]

Plaintiff argues, in the alternative, that he complied with the writing and

timeliness requirements of the FCBA because his written notice of billing error

was made in response to the re-billed charge on the September 18, 2015 statement.

To support this argument, Plaintiff relies upon inspired arguments concerning what

he believes the law **should be**.  I am compelled, however, by the plain language of

---

[58]  12 C.F.R. § 1026(b)(3).

[59]  See Knowles v. Capital One Bank (USA), N.A., Civil Action No. 4:11-CV-1257, 2015 WL 3405288, at *4 (M.D.Pa. May 26, 2015). See also Burrell, 753 F.Supp.2d at 451; Middleton v. Rogers Ltd., Inc., 804 F.Supp.2d 632, 637 (S.D. Ohio 2011).

the applicable governing regulation—12 C.F.R. § 226.13(b)—to reject this

argument.  This regulation specifically states

> A billing error notice is a written notice from a consumer that:(1) Is received by a creditor at the address disclosed under § 226.7(a)(9) or (b)(9), as applicable, no later than 60 days after the creditor transmitted the **first** periodic statement that reflects the alleged billing error.[60]

This language clearly contradicts Plaintiff's argument.  Thus, because written

notice was received by Defendant more than 60 days after the first billing

statement containing the error, Plaintiff's FCBA claim must be dismissed.[61]

### (2)    Plaintiff Has Not Alleged a Plausible Claim Under the Truth in Lending Act.

Defendant next seeks dismissal of the second count contained within

Plaintiff's Amended Complaint.  Defendant argues that dismissal is proper because

the statutory section of the Truth in Lending Act cited by Plaintiff—15 U.S.C. §

1643—does not provide cardholders with a cause of action.  Based on a review of

the case law concerning this provision, I agree with this argument and will also

dismiss this claim.

Section 1643 of the Truth in Lending Act places limits on the liability of a

cardholder for unauthorized use of a credit card.  Most pertinently, this Section

provides that "[a] cardholder shall be liable for the unauthorized use of a credit

---

[60]  12 C.F.R. § 226.13(b)(1) (emphasis added).

[61]  Middleton, 804 F.Supp.2d at 638 (dismissing an FCBA where written notice was received by Defendant more than sixty days after Plaintiff received the first statement with the incorrect charges).

card only if . . . the liability is not in excess of $50."[62]  This provision, however, does not provide a cardholder with a right to reimbursement nor a private cause of action.  Specifically, as noted by the Third Circuit in <u>Azur v. Chase Bank, USA, N.A.</u>, Section 1643

> "places a ceiling on a cardholder's obligations under the law and thus limits a card issuer's ability to sue a cardholder to recover fraudulent purchases. The language of § 1643 does not, however, enlarge a **card issuer's** liability or give the **cardholder** a right to reimbursement."[63]

Simply put, this section, while limiting a card issuer's potential recovery for fraudulent purchases, "imposes liability **only** upon the cardholder."[64]

In the matter at hand, Plaintiff, a cardholder, alleges a claim under Section 1643 of the TILA against Defendant, a card issuer.  In so doing, Plaintiff attempts to use Section 1643 as a sword bent on forcing liability through a novel cause of action.  As described above, however, this use has been invalidated by the Third Circuit.  Therefore, despite the best efforts of Plaintiff to obscure this finding, I am compelled to dismiss the instant TILA claim.

> **(3)     The Court Cannot Exercise Supplemental Jurisdiction over Plaintiff's Claim Under the Fair Credit Extension Uniformity Act/Unfair Trade Practices and Consumer Protection Law.**

---

[62]  15 U.S.C. § 1643(a)(1)(B).

[63]  601 F.3d 212, 217 (3d Cir. 2010)(emphasis added).

[64]  <u>Id.</u> (quoting <u>Sovereign Bank v. BJ.'s Wholesale Club, Inc.</u>, 533 F.3d 162, 175 (3d Cir. 2010)(emphasis added)).

The final count included in Plaintiff's amended complaint alleges a violation of the Pennsylvania Fair Credit Extension Uniformity Act[65] as enforced by the remedial provision of the Unfair Trade Practices and Consumer Protection Law.[66] Defendant moves for dismissal of this count for failure to state a claim upon which relief can be granted.  However, because my prior dismissal of Plaintiff's claims under the FCBA and TILA removed this Court's original jurisdiction, I am unable to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 and therefore cannot reach Defendant's arguments.

Title 28 of the United States Code, Section 1367 governs jurisdiction over supplemental state law claims brought in federal court.  Specifically, Section 1367(a) states that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[67]  This exercise of supplemental jurisdiction may be declined, however, if the court "has dismissed all claims over which it has original jurisdiction."[68]  Furthermore, the Third Circuit has recognized that "where

---

[65] 73 Pa. Stat. § 2270.1 et seq.

[66] 73 Pa. Stat. § 201–9.2.

[67] 28 U.S.C. § 1367(a).

[68] Id. § 1367(c)(3).

the claim over which the district court has original jurisdiction is dismissed before

trial, the district court must decline to decide the pendent state claims unless

considerations of judicial economy, convenience, and fairness to the parties

provide an affirmative justification for doing so."[69]

As more fully discussed above, Plaintiff has failed to plead plausible claims

under the FCBA and TILA over which this Court would have original jurisdiction.

In accordance with the directives of the Third Circuit, I further find that there

exists no affirmative justification for this Court to exercise supplemental

jurisdiction on the instant state law claim.  Plaintiff's state law claim under the

FCEUA/UTPCPA must therefore be dismissed without prejudice to Plaintiff re-

filing this claim in state court.[70]

### (4)   Plaintiff Will Not Be Granted Leave to Amend His FCBA or TILA claims.

Plaintiff will not be granted leave to amend.  The Third Circuit has directed

that, when a complaint is subject to Rule 12(b)(6) dismissal, a court "must permit a

curative amendment unless such an amendment would be inequitable or futile."[71]

Specifically, the Third Circuit in Phillips v. County of Allegheny has stated that

---

[69] Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000)(citing Borough of West Miflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995)).

[70] See 28 U.S.C. § 1367(d) (providing for at least a thirty-day tolling of any applicable statute of limitation to allow a plaintiff time to re-file state-law claims in state court).

[71] Phillips v. Cnty of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008).

16

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.[72]

Concerning futility, the Third Circuit has sanctioned denial of leave to amend "if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."[73]

In this case, amendment of Plaintiff's FCBA and TILA claims would be futile. I reach this conclusion because the factual and legal deficiencies delineated above cannot be cured so as to survive a second motion to dismiss. Moreover, concerning Plaintiff's state law FCEUA/ UTPCPA claim, amendment is not proper as the Court has declined to exercise supplemental jurisdiction over this claim. As discussed above, however, Plaintiff's ability to re-file this claim in state court will not be impaired.

## III.   CONCLUSION

Based on the above reasoning, Defendant's Motion to Dismiss is granted. Counts I and II of Plaintiff's Complaint are accordingly dismissed with prejudice. The Court will also decline to exercise supplemental jurisdiction over Count III without prejudice to Plaintiff re-filing this state-law claim in state court.

An appropriate Order follows.

---

[72] Id.

[73] Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000).

BY THE COURT:


__s/ Matthew W. Brann_____
Matthew W. Brann
United States District Judge